FILED
CLERK, U.S. DISTRICT COURT

SEP I 5 2014

CENTRAL DISTRICT OF CALIFORNIA
BY_____DEPUTY

1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10  GUSTAVO MCKENZIE,                ) CASE NO. CV 13-3199-PJW
                                     )
11              Petitioner,          ) MEMORANDUM OPINION AND ORDER
                                     ) DENYING PETITION, DISMISSING
12        v.                         ) ACTION WITH PREJUDICE, AND DENYING
                                     ) CERTIFICATE OF APPEALABILITY
13  JEFF MACOMBER, WARDEN,           )
                                     )
14              Respondent.          )
                                     )
15  _____)

16       Petitioner filed this Habeas Corpus Petition pursuant to 28

17  U.S.C. § 2254, alleging that his trial was unfair, his sentence was

18  improper, and his appellate lawyer was ineffective.  Respondent filed

19  an Answer contesting each of these claims.  For the reasons discussed

20  below, the Court sides with Respondent.  The Petition is denied and

21  the action is dismissed with prejudice.[1]

22

23

24

25

26

27
    _____
         [1]  Jeff Macomber, the acting warden at the prison where
28  Petitioner is housed, is substituted-in as Respondent pursuant to
    Federal Rule of Civil Procedure 25(d).

I.

SUMMARY OF PROCEEDINGS

A.    State Court Proceedings

In 2008, Petitioner was found guilty by a jury in Los Angeles County Superior Court of burglary.  (Clerk's Transcript ("CT") 135.) The trial court subsequently found that he had a prior "strike" under California's Three Strikes law and sentenced him to 12 years in prison.  (CT 191, 210.)

Petitioner appealed to the California Court of Appeal, which affirmed the judgment.  (Lodged Document Nos. 2, 14-15.)  He then filed a petition for review in the California Supreme Court, which was summarily denied.  (Lodged Document Nos. 3-4.)  Thereafter, he filed habeas corpus petitions in the Los Angeles County Superior Court, the California Court of Appeal, and the California Supreme Court, all of which were denied.  (Lodged Document Nos. 5-12.)

B.    Federal Court Proceedings

In May 2013, Petitioner, proceeding pro se, filed a Petition for Writ of Habeas Corpus in this court, pursuant to 28 U.S.C. § 2254, claiming:

1.    The trial court violated his right to an impartial jury and a fair trial.

2.    The trial court violated his right to confront witnesses and present a defense.

3.    The prosecutor presented perjured testimony at trial.

4.    The prosecutor committed misconduct during trial.

5.    Petitioner received an unlawful sentence in violation of his right to a jury trial.

1      6.     Appellate counsel was ineffective for failing to raise all

2             of these claims on appeal.

3  (Petition at 5-7.[2])

4                                    II.

5                          STATEMENT OF FACTS

6       The following statement of facts was taken verbatim from the

7  California Court of Appeal's opinion affirming Petitioner's

8  conviction:

9       The prosecution evidence established that Milton Holland

10      observed [Petitioner] on April 6, 2008, at approximately

11      12:00 a.m. in the area of 432 East Spruce Avenue in Inglewood

12      break into a black Honda.  Holland dialed 911.  [Petitioner]

13      came within three feet of Holland, who asked, "'What's up.'"

14      Although he was wearing a hooded shirt, Holland saw

15      [Petitioner's] face.  [Petitioner] continued to walk down the

16      street and look into parked cars.  Holland heard sirens, and

17      the police arrived in about two minutes.  Holland identified

18      [Petitioner] at trial.

19

20

21         [2]  Respondent moved to dismiss the Petition on the ground that it
22  was untimely and included unexhausted claims.  The Court denied the
    motion without prejudice, inviting Respondent to submit additional
23  evidence in support of the motion.  Respondent has chosen not to do so
    and, instead, argues that it is "easier to dispose" of the claims on
24  their merits.  (Answer at 2 n.3.)  The Court agrees and will bypass
    the procedural issues.  See Lambrix v. Singletary, 520 U.S. 518,
25  524-25 (1997) ("We do not mean to suggest that the procedural-bar
    issue must invariably be resolved first [given constraints of judicial
26  economy].");  Flournoy v. Small, 681 F.3d 1000, 1004 n.1 (9th Cir.
    2012) ("While we ordinarily resolve the issue of procedural bar prior
27  to any consideration of the merits on habeas review, we are not
    required to do so when a petition clearly fails on the merits."),
28  cert. denied, 133 S. Ct. 880 (2013).

                                    3

Officer Alejandro Cornejo, of the Inglewood Police Department, responded to Holland's 911 call.  Officer Cornejo searched [Petitioner] after his arrest and found glass fragments in [Petitioner's] pocket consistent with broken automobile glass.

Officer James Coury of the Inglewood Police Department responded to Holland's 911 call.  Officer Coury saw [Petitioner] running towards Manchester.  [Petitioner] ran into a parking lot, and refused to stop when Officer Coury ordered him to do so.  Officer Coury fired his taser, and [Petitioner] dropped to the ground.  [Petitioner] released a screwdriver from his grasp, and another officer handcuffed him.

[Petitioner] testified on his own behalf that on April 6, 2008 at approximately 5:00 p.m. he went to play handball with some friends.  After the game, one of his friends got drunk and asked [Petitioner] to drive him home.  [Petitioner] dropped him off and went onto a back street to smoke some marijuana.  He walked towards Manchester to catch a bus when Officer Coury stopped his patrol car and came toward him.  Officer Coury commanded [Petitioner] to stop or he would shoot.  [Petitioner] ran off, but fell down when Officer Coury tasered him.

(Lodged Document No. 2 at 4.)

4

1          III.

2     STANDARD OF REVIEW

3     The standard of review in this case is set forth in 28 U.S.C.

4  § 2254:

5          An application for a writ of habeas corpus on behalf of a

6          person in custody pursuant to the judgment of a State court

7          shall not be granted with respect to any claim that was

8          adjudicated on the merits in State court proceedings unless

9          the adjudication of the claim--

10              (1)  resulted in a decision that was contrary to, or

11         involved an unreasonable application of, clearly established

12         Federal law, as determined by the Supreme Court of the United

13         States; or

14              (2)  resulted in a decision that was based on an

15         unreasonable determination of the facts in light of the

16         evidence presented in the State court proceeding.

17  28 U.S.C. § 2254(d).

18     A state court decision is "contrary to" clearly established

19  federal law if it applies a rule that contradicts Supreme Court case

20  law or if it reaches a conclusion different from the Supreme Court's

21  in a case that involves facts that are materially indistinguishable.

22  *Premo v. Moore*, 131 S. Ct. 733, 743 (2011) (citing *Bell v. Cone*, 535

23  U.S. 685, 694 (2002)).  To establish that the state court unreasonably

24  applied federal law, a petitioner must show that the state court's

25  application of Supreme Court precedent to the facts of his case was

26  not only incorrect but objectively unreasonable.  *Renico v. Lett*, 559

27  U.S. 766, 773 (2010).  Where no decision of the Supreme Court has

28  squarely decided an issue, a state court's adjudication of that issue

1 | cannot result in a decision that is contrary to, or an unreasonable
2 | application of, Supreme Court precedent.  *See Harrington v. Richter*,
3 | 131 S. Ct. 770, 786 (2011).

4 | Petitioner, for the most part, raised the instant claims in his
5 | habeas petitions in the state courts.  The California Supreme Court
6 | did not explain its reasons for denying them, but the Los Angeles
7 | County Superior Court did.  (Lodged Document Nos. 5, 11-12.)  This
8 | Court presumes that the state supreme court rejected Petitioner's
9 | claims for the same reasons that the superior court did.  The Court,
10 | therefore, looks to the superior court's reasoning and will not
11 | disturb it unless it concludes that "fairminded jurists" would all
12 | agree that the decision was wrong.  *Richter,* 131 S. Ct. at 786; *see*
13 | *also Johnson v. Williams*, 133 S. Ct. 1088, 1094 n.1 (2013) (approving
14 | reviewing court's decision to "look through" state supreme court's
15 | silent denial to last reasoned state-court decision).

16 | IV.

17 | DISCUSSION

18 | A.   Right to Impartial Jury

19 | Petitioner, who is African-American, claims that the trial court
20 | violated his right to a fair trial by an impartial jury when it
21 | empaneled a "predominantly white jury" and when it prohibited him from
22 | questioning potential jurors about their racial bias.  (Petition at 5-
23 | 5B2; Traverse at 12-14.)  There is no merit to these arguments.

24 | A criminal defendant has a Sixth Amendment right to a fair and
25 | impartial jury pool drawn from a racially representative cross-section
26 | of the community.  *See Holland v. Illinois*, 493 U.S. 474, 480 (1990).
27 | The Sixth Amendment, however, does not require that the jurors who are
28 | seated on a jury "mirror the community."  *Taylor v. Louisiana*, 419

U.S. 522, 538 (1975).  To establish a prima facie violation of the
fair cross-section jury pool requirement, Petitioner must show that
blacks were under-represented in the venire due to systematic
exclusion in the jury-selection process.  *Duren v. Missouri*, 439 U.S.
357, 364 (1979).

Petitioner complains that he was arrested in Inglewood--which he
believes is predominantly black--but tried in Torrance, which he
believes is predominantly white.  He contends that, because his jury
had only three blacks, he was denied his right to an impartial jury
and a fair trial.[3]  (Petition at 5B1.)

Petitioner is wrong.  As the Los Angeles County Superior Court
found when it rejected this claim, the mere fact that there was
statistical under-representation of blacks on the petit jury is not
enough to demonstrate purposeful discrimination.  (Lodged Document No.
6 at 4.)  Further, Petitioner has not presented any evidence as to the
number of blacks in the community.  Nor has he provided proof of the
number of blacks in the venire.  Though he suggests that some African-
Americans were excused from the venire for financial hardships, he
does not explain how this impacted the number of blacks on the jury.
This was his burden and his failure to provide any evidence to support
this claim is fatal to it.  *See, e.g., Ross v. Miller*, 2014 WL
1419480, at *14 (C.D. Cal. Apr. 14, 2014) (rejecting claim that
African-Americans were systematically excluded from jury pool because
petitioner failed to provide the "statistical data necessary" to
determine any alleged under-representation).

---

[3]  The state court found that there were four black jurors seated
on the jury.  (Lodged Document No. 6 at 4.)  This distinction is not
significant, however, to a determination of the claim.

7

1    Petitioner claims that, in replacing one of the jurors with an
2  alternate juror during trial, the court "skipped over" an African-
3  American woman and selected a white woman instead.   (Petition at 5B2.)
4  Though it is not clear from the record what race the alternates were,
5  assuming, arguendo, that Petitioner is right and that the alternate
6  juror that the court excused was black and that the alternate that was
7  placed on the jury was white, that still would not be enough to
8  establish a constitutional violation.   The trial court made clear on
9  the record that it was excusing the first alternate juror because she
10 had been sleeping and not paying attention to the evidence.
11 (Reporter's Transcript ("RT") 1806.)   The court detailed its findings
12 and the efforts it had made during the proceedings to keep her awake--
13 including use of fans, offers of caffeinated beverages, and
14 positioning of the bailiff--in concluding that she had not been paying
15 attention to the evidence.   (RT 1806-07.)   As the Los Angeles County
16 Superior Court noted, her inattention during voir dire amounted to
17 "good cause" to excuse her.   (Lodged Document No. 6 at 5.)   Thus, the
18 court's decision to seat the white alternate juror did not violate
19 Petitioner's right to an impartial jury.

20    Petitioner claims that, during voir dire, the trial court
21 improperly prevented him from questioning potential jurors about
22 racial bias.   (Petition at 5B1; Traverse at 14.)   Petitioner never
23 exhausted this claim, thus, it was never addressed by the state
24 courts.   Regardless, the Court finds that Petitioner is not entitled
25 to relief.   Though the record supports his contention that the trial
26 court prevented him from questioning certain jurors about racial bias,
27 the United States Supreme Court has specifically held that a state
28 court's failure to do so in a non-capital case is not unconstitution-

1  al.   *See Ristaino v. Ross*, 424 U.S. 589, 597-98 & n.9 (1976) ("[W]e
2  hold that Voir dire questioning directed to racial prejudice was not
3  constitutionally required . . . ."); *cf. Turner v. Murray*, 476 U.S.
4  28, 36-37 (1986) (holding, in capital proceeding involving black
5  defendant charged with murdering white victim, state court judge
6  required to voir dire prospective jurors on issue of racial bias).
7  This is particularly true where, as here, the crime involved was a
8  burglary of a vehicle, a property crime, and there was no danger that
9  jurors would be biased against the defendant because he was black and
10 the victim was white.   *See, e.g., Rosales-Lopez v. United States,* 451
11 U.S. 182, 190-93 (1981) (holding, because issues in the trial did not
12 involve allegations of racial prejudice, "the Constitution leaves it
13 to the trial court" to determine the scope of voir dire).   Further,
14 Petitioner has failed to show that the trial court's failure to allow
15 him to question the jurors about bias rendered his trial fundamentally
16 unfair, which was his burden.   *See Mu'Min v. Virginia*, 500 U.S. 415,
17 425-26 (1991) ("To be constitutionally compelled, however, it is not
18 enough that such [voir dire] questions might be helpful.   Rather, the
19 trial court's failure to ask these questions must render the
20 defendant's trial fundamentally unfair.").   For these reasons, this
21 claim, too, is denied.

22 B.   Right to Confront Witnesses and Present a Defense

23      In Ground Three, Petitioner claims that the trial court abused
24 its discretion by denying him the opportunity to confront witnesses
25 and present a defense.   (Petition at 5-6, 6A1-6A5; Traverse at 14-15.)
26 There is no merit to this claim.

27      It is well established that a criminal defendant has a Sixth
28 Amendment right to present a defense.   *Chambers v. Mississippi*, 410

9

1 U.S. 284, 294 (1973).  The right to present a defense may be violated
2 by the erroneous exclusion of evidence critical to assessing the
3 credibility of witnesses.  *DePetris v. Kuykendall*, 239 F.3d 1057, 1062
4 (9th Cir. 2001).  However, "[t]he accused does not have an unfettered
5 right to offer testimony that is incompetent, privileged, or otherwise
6 inadmissible under standard rules of evidence."  *Taylor v. Illinois*,
7 484 U.S. 400, 410 (1988).  A state court's decision to exclude
8 evidence would violate constitutional norms only if it was "so
9 prejudicial as to jeopardize the defendant's due process rights."
10 *Tinsley v. Borg*, 895 F.2d 520, 530 (9th Cir. 1990).

11        During cross-examination of eyewitness Milton Holland, Petitioner
12 attempted to impeach him with prior inconsistent statements from his
13 preliminary hearing testimony.  (RT 673-74.)  The trial court
14 sustained the prosecutor's objections to several of Petitioner's
15 questions because they were vague, compound, and improper and because
16 Petitioner had not laid the proper foundation.  (*See* RT 674-85.)
17 Eventually, the court excused the jury and attempted to explain to
18 Petitioner how to do that.  (RT 685-87.)  The court told Petitioner
19 that he could "vigorously" cross-examine Holland but that he needed to
20 comply with the rules in doing so.  (RT 687.)  The court warned
21 Petitioner that he would not be allowed to ask multiple questions at
22 one time or to simply read Holland's preliminary hearing testimony
23 into the record.  (RT 688-89.)  Thereafter, Petitioner successfully
24 pointed out for the jury several inconsistencies between Holland's
25 trial testimony and his preliminary hearing testimony.[4]  (*See, e.g.,*

26

27        [4]  For example, he demonstrated that Holland's trial testimony
that he saw Petitioner looking into car windows before hearing
28 Petitioner break into the Honda was contradicted by his preliminary
hearing testimony that he first saw Petitioner when he heard a

1  RT 693-96, 702-06.)  Petitioner also pointed out inconsistencies in
2  Holland's description of the burglar.  Holland admitted, for example,
3  that he was unsure whether the burglar's jacket was blue or black and,
4  at the time, did not know the burglar's race.  (RT 707-14, 723-24.)
5  Nevertheless, Holland maintained that he had no doubt that Petitioner
6  was the one whom he saw break into the car on the night of the
7  burglary.  (RT 729.)

8      Contrary to Petitioner's claims here, there was no error in the
9  trial court's limitations on Petitioner's questioning of the witness.
10  Petitioner was warned before trial that he had to follow the rules if
11  he represented himself.  (RT A-4.)  The trial court's insistence that
12  he follow the rules once the trial began was not unconstitutional.
13  The fact that Petitioner had difficulty following the rules when
14  cross-examining Holland does not mean that the trial was unfair.  *See*
15  *Taylor*, 484 U.S. at 410; *see also Delaware v. Fensterer*, 474 U.S. 15,
16  20 (1985) (*per curiam*) (stating Confrontation Clause guarantees only
17  "an *opportunity* for effective cross-examination, not cross-examination
18  that is effective in whatever way, and to whatever extent, the defense
19  might wish").  This is particularly so where, as here, Petitioner has
20  not shown that any of the evidence critical to his defense was
21  excluded from trial.  *See DePetris*, 239 F.3d at 1062.  For these
22  reasons, the state court reasonably rejected this claim.
23  C.  <u>Use of Perjured Testimony</u>
24      In Ground Four, Petitioner claims that the prosecutor knowingly
25  allowed Holland to falsely testify that he saw Petitioner break into
26
27  "booming sound" coming from the breaking of a car window.  (RT 692-
28  95.)  He also showed that Holland was confused as to which car door he
   saw Petitioner open after breaking the window.  (RT 703-05.)

1  the car on the night he was arrested.   (Petition at 6, 6B1-6B11;
2  Traverse at 16.)   There is no merit to this claim.

3       A conviction obtained by the knowing use of false evidence or
4  perjured testimony is fundamentally unfair and violates a defendant's
5  constitutional rights.   *United States v. Agurs*, 427 U.S. 97, 103
6  (1976); *see also Napue v. Illinois*, 360 U.S. 264, 269-70 (1959) ("A
7  lie is a lie, no matter what its subject, and, if it is in any way
8  relevant to the case, the district attorney has the responsibility and
9  duty to correct what he knows to be false and elicit the truth."
10 (internal quotation marks omitted)).   To merit habeas relief, a
11 petitioner must show that the testimony was actually false, that the
12 prosecutor knew or should have known that it was false, and that the
13 falsehood was material to the case.   *Jackson v. Brown*, 513 F.3d 1057,
14 1071-72 (9th Cir. 2008).   A *Napue* violation is material if there is
15 any reasonable likelihood that the false testimony could have affected
16 the jury's decision.   *Libberton v. Ryan*, 583 F.3d 1147, 1164 (9th Cir.
17 2009).

18      At trial, Holland testified that he saw Petitioner looking
19 through the windows of a Honda Accord, heard a "booming sound," and
20 saw Petitioner "ramming" something into the window of the Honda.   (RT
21 643, 655-56.)   Holland explained that he dialed 9-1-1 while he watched
22 Petitioner put his hand inside the window of the car and open the
23 front passenger side door.   (RT 657-58.)   Holland then saw Petitioner
24 look into the windows of several other cars as he continued to walk
25 down the street, eventually walking within three feet of him.   (RT
26 661-62.)   Holland also testified that Petitioner had a hood on but
27 that he could see Petitioner had a "big nose," a beard, braided hair,
28

1  and a "dark face."  (RT 662-63.)  He testified that Petitioner was
2  wearing a black jacket.  (RT 662-63.)  No more than two minutes after
3  Holland called 9-1-1, he heard police sirens and saw Petitioner
4  "hightailing it" away from the area.  (RT 664.)  Police captured
5  Petitioner at the scene and Holland identified him at the scene as the
6  person he saw breaking into the Honda Accord.  (RT 666-69.)

7      Petitioner claims that Holland's testimony in which he identified
8  Petitioner as the burglar was a lie.  He argues that Petitioner told
9  the 9-1-1 operator that the suspect had on a blue--not black--jacket
10 and that he was unable to identify the suspect's race because he could
11 not see his face.  He also points out that Holland's testimony was
12 inconsistent with his preliminary hearing testimony in which, for
13 example, he testified that Petitioner had opened a different door on
14 the Honda.

15     These arguments are rejected.  Mere inconsistencies in testimony
16 from a witness are quite common and do not establish that the
17 testimony offered at trial was false.  *United States v. Croft*, 124
18 F.3d 1109, 1119 (9th Cir. 1997).  Ultimately, it was for the jurors to
19 decide whether to believe Holland's testimony and, in this case, they
20 clearly did.  *See United States v. Geston*, 299 F.3d 1130, 1135 (9th
21 Cir. 2002) ("It was within the province of the jury to resolve the
22 disputed testimony.").  It is not for this Court to reconsider that
23 decision.

24     Petitioner suggests that the police lied when they testified that
25 they found a screwdriver and shards of glass on Petitioner when he was
26 arrested.  The Los Angeles County Superior Court denied this claim,
27 finding that Petitioner failed to provide any evidence to support this
28 allegation.  (Lodged Document No. 6 at 6.)  The Court agrees.  The

13

1   jury has rendered its verdict on the evidence.  Implicit in that
2   verdict is a finding that the police and Mr. Holland were telling the
3   truth and that Petitioner was lying.  That credibility decision is not
4   subject to review.  For that reason, this claim, too, is denied.[5]

5   D.   Prosecutorial Misconduct

6        In Ground Five, Petitioner claims that he was denied the right to
7   a fair trial by the prosecution's numerous acts of misconduct.
8   (Petition at 6, 6C1-6C4; Traverse at 16-17.)  There is no merit to
9   this claim.

10       Petitioner, who was acting as his own lawyer at trial, contends
11  that the prosecutor never provided him with the names, addresses, and
12  telephone numbers of the "other" 9-1-1 callers.  A prosecutor has a
13  constitutional obligation to provide exculpatory evidence to the
14  defense, whether substantive or for impeachment purposes, when that
15  evidence is "material" to the defense and in possession of the
16  government.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  In denying
17  this claim, the Los Angeles County Superior Court found that the
18  prosecution had provided Petitioner with all of the 9-1-1 calls prior
19  to trial.  (Lodged Document No. 6 at 7.)  The record supports this
20  finding and, therefore, this claim is denied.

21       Petitioner claims that the prosecutor improperly vouched for the
22  credibility of the police officers during closing argument by telling
23  the jury that the officers are not "going to risk[] their jobs, their

24

25       [5]  Petitioner claims that Officer Cornejo was lying when he
26  testified that Petitioner had a screwdriver when he was arrested as
    evidenced by the fact that Cornejo testified that it was a "flathead"
27  screwdriver and the screwdriver in evidence was a "starhead"
    screwdriver.  (*See* RT 971-73.)  This alleged inconsistency in the
28  testimony does not prove that Cornejo lied at trial.  *See Croft*, 124
    F.3d at 1119.

                                    14

1   careers, their pensions" and lie just to convict Petitioner.  (RT
2   1811.)  Assuming that this was improper vouching, *see United States v.*
3   *Weatherspoon*, 410 F.3d 1142, 1146 (9th Cir. 2005) (finding
4   prosecutor's argument that police could lose their jobs, pension, and
5   livelihood if they did not tell the truth was improper vouching),
6   Petitioner's conviction turned on Holland's eyewitness testimony that
7   he saw Petitioner break into the car.  The impact of the police
8   officers' testimony was minimal to that conviction, at best.  Thus,
9   any improper vouching by the prosecutor was harmless and Petitioner's
10  arguments in this regard are overruled.  *See United States v. Stinson*,
11  647 F.3d 1196, 1213 (9th Cir. 2011) (finding improper governmental
12  vouching "was harmless in light of the strength of its case").

13      Petitioner contends that the prosecutor told several lies during
14  closing argument, including that Holland was scared to testify, that
15  Holland identified the burglar as a "male black" to the 9-1-1
16  operator, and that Petitioner was lying.  In denying this claim, the
17  Los Angeles County Superior Court held that the prosecutor's argument
18  was not evidence and that any misstatement of facts did not violate
19  Petitioner's due process rights.  (Lodged Document No. 6 at 7.)

20      Again, the Court agrees.  Prosecutors are given wide latitude in
21  closing argument and may strike hard blows based on the evidence in
22  the case and the reasonable inferences that can be drawn from it.  *See*
23  *Berger v. United States*, 295 U.S. 78, 88 (1935); *see also Turner v.*
24  *Marshall*, 63 F.3d 807, 818 (9th Cir. 1995) (holding prosecutors may
25  even express doubt about the veracity of a witness's testimony and
26  argue that it was fabricated), *overruled on other grounds by Tolbert*
27  *v. Page*, 182 F.3d 677 (9th Cir. 1999) (en banc).  To the extent that
28  the prosecutor made misstated the facts in closing argument, the court

15

1   instructed the jury that the prosecutor's closing argument was not
2   evidence and that the jury was to decide the facts based on the
3   evidence.   (CT 105.)   A jury is presumed to follow its instructions.
4   *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).   As such, Petitioner has
5   not demonstrated any misconduct in the prosecutor's closing argument
6   that prejudiced his case or rendered his trial unfair.   Accordingly,
7   the state court's rejection of this claim was inherently reasonable
8   and will not be disturbed.

9   E.   Sentencing Error

10      In Ground Six, Petitioner claims that the trial court's
11  imposition of an upper-term sentence of six years violated his right
12  to have the jury determine the facts that led to his sentence.
13  (Petition at 7-7A3; Traverse at 17-19.)   There is no merit to this
14  claim.

15      In *Cunningham v. California*, 549 U.S. 270, (2007), the Supreme
16  Court held that, under California's then-applicable sentencing law,
17  trial judges were not allowed to sentence a defendant to the upper
18  term based on any fact that was not submitted to the jury and proved
19  beyond a reasonable doubt.   *Id.* at 274-75.   In 2007, in the wake of
20  *Cunningham*, the state legislature amended the law to authorize trial
21  judges to sentence defendants to the upper term without a jury
22  determination of any relevant facts.

23      Petitioner was sentenced in September 2008, long after the new
24  law went into effect and, therefore, the trial court's upper-term
25  sentence did not violate the Constitution.   *See Butler v. Curry*, 528
26  F.3d 624, 652 n.20 (9th Cir. 2008) ("Following the decision in
27  *Cunningham,* the California legislature amended its statutes such that
28  imposition of the lower, middle, or upper term is now discretionary

16

1 │ and does not depend on the finding of any aggravating factors.");

2 │ *Sindorf v. Cate*, 2013 WL 129413, at *20 (C.D. Cal. Jan. 9, 2013)

3 │ (finding "upper term is now the statutory maximum" under revised law);

4 │ Cal. Penal Code § 1170(b) (as amended, effective March 30, 2007).

5 │     Moreover, the court chose the upper-term sentence based, in part,

6 │ on Petitioner's 15 prior felony and misdemeanor convictions.   (RT

7 │ 2705-08; Lodged Document No. 6 at 9.)   The use of prior convictions to

8 │ enhance a sentence is an exception to the rule that aggravating

9 │ factors must be presented to a jury and proven beyond a reasonable

10 │ doubt.   *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("*Other*

11 │ *than the fact of a prior conviction*, any fact that increases the

12 │ penalty for a crime beyond the prescribed statutory maximum must be

13 │ submitted to a jury, and proved beyond a reasonable doubt." (italics

14 │ added)); *Alexander v. Grounds*, 2013 WL 6254677, at *6 (C.D. Cal. Dec.

15 │ 2, 2013) ("A sentencing judge's imposition of an upper term sentence

16 │ based upon prior convictions does not violate *Cunningham*.").   For

17 │ these reasons, the trial court's imposition of the upper term did not

18 │ violate Petitioner's constitutional rights.

19 │ F.   <u>Ineffective Assistance of Appellate Counsel</u>

20 │     Finally, Petitioner complains that his appellate counsel was

21 │ ineffective because she refused to raise all of the claims Petitioner

22 │ has raised herein.   (Petition at 5, 5A1-5A4; Traverse at 10-12.)

23 │ Because the Court has determined that none of these claims has any

24 │ merit, it also concludes that appellate counsel did not err in failing

25 │ to raise them on appeal.   *See Wildman v. Johnson*, 261 F.3d 832, 840

26 │ (9th Cir. 2001) ("[A]ppellate counsel's failure to raise issues on

27 │

28 │

1  direct appeal does not constitute ineffective assistance when appeal
2  would not have provided grounds for reversal.").[6]

3      IT IS SO ORDERED.

4      DATED: September *15*, 2014.

6

7                      *Patrick Jn Walsh*
                PATRICK J. WALSH
8                  UNITED STATES MAGISTRATE JUDGE

24  S:\PJW\Cases-State Habeas\MCKENZIE, G 3199\Memorandum Opinion and Order.wpd

---

26
27  [6]  Because Petitioner has not made a substantial showing of the denial of a constitutional right, he is not entitled to a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000);
28  *see also* Fed. R. App. P. 22(b).

18